IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BILLY R. CALDER, JR.                                                                         PLAINTIFF

v.                              Civil No. 07-5063

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                               DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Billy Calder, Jr., brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for period of disability, disability insurance benefits (DIB), and supplemental security income (SSI), pursuant to Title II and XVI of the Social Security Act (hereinafter "the Act").  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**Procedural Background**

The plaintiff protectively filed his applications for DIB and SSI on November 16, 2004, alleging an onset date of August 1, 2003, due to hypertension, a heard condition, low-and mid-back pain, and asthma.  (Tr. 70-71).  An administrative hearing was held on May 5, 2006.  (Tr. 173-217).  Plaintiff was present and represented by counsel.

At this time, plaintiff was 34 years old and possessed the equivalent of a high school education with a few college credits.  (Tr. 180, 189).  Records indicate that he has past relevant work (PRW) experience as a construction laborer, trailer repairer, and line worker.  (Tr. 79, 182-188).

On June 19, 2006, the ALJ found that plaintiff had a combination of severe impairments, but she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 13). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform light work; limited by his reduced fingering ability; inability to perform fine manipulation with his hands; inability to climb scaffolds, ladders, and ropes; need to avoid concentrated exposure to dust, fumes, smoke, chemicals, and noxious gases; and, ability to only perform work with simple non-complex instructions that requires little judgment. (Tr. 14). With the assistance of a vocational expert, the ALJ then concluded that plaintiff could perform work as a dishwasher, construction helper, signaler, and press machine operator. (Tr. 16).

The plaintiff then requested a review of the hearing by the Appeals Council, which denied that request on February 1, 2007. (Tr. 3-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 7, 9).

**Evidence Presented**

On January 23, 2004, plaintiff sought treatment for shortness of breath and chest pain. (Tr. 119-129). He also complained of a nosebleed. A chest x-ray revealed a normal sized heart with no acute cardiopulmonary process. (Tr. 129). Due to plaintiff's family history of coronary artery disease, his tobacco addiction, and his reports of increased stress, Dr. Mike Meyer admitted him for observation. (Tr. 122). His diagnoses were chest pain and anxiety. (Tr. 123). Plaintiff, however, left the hospital against medical advice. (Tr. 119).

2

On March 24, 2004, plaintiff was treated for high blood pressure and chest pain. (Tr. 135, 163). He was diagnosed with hypertension, obesity, and early emphysema. (Tr. 135).

On April 27, 2004, plaintiff was seen by Dr. Pearson, at a free health clinic. (Tr. 133, 160). After diagnosing him with hypertension, hyponatremia, and smoking, the doctor decreased plaintiff's dosage of HCTZ and advised him to lose weight and start exercising. (Tr. 133).

On September 8, 2004, plaintiff was treated by Dr. Scott, at the same free clinic, for painful fingers. (Tr. 131, 159). Dr. Scott also noted that plaintiff had stopped taking his hypertension medication because he said it made him feel tired. He diagnosed plaintiff with obesity, hypertension, and osteoarthritis. Dr. Scott then prescribed HCTZ and Lisinopril. These prescriptions were also filled for plaintiff through the free clinic. (Tr. 131).

On September 29, 2004, plaintiff sought emergency treatment after experiencing chest and left arm pain. (Tr. 103). He stated that he had hypertension and had been checking his blood pressure at Wal-Mart. Plaintiff also reported mood changes and anxiety. However, he indicated that he was not taking any medications. Dr. Roger Montgomery admitted plaintiff to telemetry for evaluation of his chest pain. (Tr. 104, 110-112). Laboratory tests revealed normal cardiac markers and an EKG failed to reveal any evidence of acute ischemia. (Tr. 108, 117, 118). A chest x-ray also showed no focal consolidation and mild interstitial prominence. (Tr. 117). An exercise tolerance test was performed on September 30, 2004, and was also normal, revealing no ischemic changes. (Tr. 116). As plaintiff had no further chest pain, Dr. Montgomery discharged him on October 1, 2004.

In addition to the chest pain, Dr. Montgomery also noted that plaintiff suffered from reactive airway disease which was being treated via Albuterol and Flovent on an outpatient basis.

(Tr. 108). He indicated that a large part of plaintiff's problem was his use of tobacco, which plaintiff agreed to discontinue. Dr. Montgomery stated that plaintiff's use of tobacco further increased his risk of development of atherosclerosis, cerebrovascular disease, and other related disorders. Plaintiff was also treated for hypertriglyceridemia and hypertension while hospitalized. For this, he was prescribed Gemfibrozil and Lisinopril. (Tr. 108-109). In a discharge summary, Dr. Montgomery diagnosed plaintiff with atypical chest pain, hypertriglyceridemia, borderline hypertension, reactive airway disease, and tobacco use. (Tr. 108). He planned a follow-up examination with plaintiff in three to four weeks. (Tr. 109). Dr. Montgomery also recommended that plaintiff undergo additional laboratory tests. (Tr. 109).

On February 17, 2005, plaintiff complained of a "foggy head;" dizziness everyday; and, chest, left arm, back, and extremity pain. (Tr. 130, 158). An examination revealed a blood pressure of 160/114 and wheezing. Plaintiff was advised to stop smoking, lose weight, and exercise. The doctor also prescribed Atenolol, Enalapril, Lipitor, and Albuterol MDI. (Tr. 130).

On May 1, 2006, plaintiff underwent a mental status and evaluation of adaptive functioning with Dr. Richard Back, a clinical psychologist. (Tr. 139-143). Although plaintiff denied any inpatient psychiatric treatment, he did report seeing a counselor several years prior for anger problems. Plaintiff also stated that he abused alcohol from the age of 18 until approximately 2003. (Tr. 140). Dr. Back noted that he had a "non-chalant, devil may care attitude." Plaintiff sighed often and stated that he could feel his heart racing at times. He also reported that he had been placed on heart medication and told to exercise, but that he could not exercise on the medication because it slowed his heart down "so much." During testing, plaintiff maintained good persistence, but stopped at one point and shook out his right hand, "proclaiming

that 'it starts to go numb and I just have to shake it.'" Dr. Back indicated that plaintiff had a mild flight of ideas and needed to be refocused on the topic. When asked about depression, plaintiff stated that he suffered from crying spells occasionally and really did not have any reason to go on living, although he denied suicidal ideations. Plaintiff complained of sleep and appetite disturbances, and reported experiencing binges related to food, sex, and exercise that lasted about a week at a time. (Tr. 141).

Dr. Back noted that plaintiff "appeared to be in contact with reality." (Tr. 141). He also concluded that plaintiff had no significant memory impairment. (Tr. 142). Plaintiff was easily understood and communicated effectively. (Tr. 142). Dr. Back found no evidence of unusual dependency, aggression, or impulsiveness. However, there was evidence of marked passivity and withdrawal. Dr. Back determined that plaintiff's concentration was within normal limits, his persistence was moderately impaired, his pace was markedly impaired, and his obsessive compulsive disorder distracted him "significantly from [the] completion of tasks." (Tr. 143). Dr. Back then diagnosed plaintiff with obsessive compulsive disorder and personality disorder not otherwise specified. (Tr. 143). He opined that plaintiff's condition was not expected to improve over the following 12 months. (Tr. 143). Although Dr. Back concluded that the plaintiff was not mentally retarded, he determined that his level of adaptive functioning was markedly impaired. (Tr. 143).

On May 16, 2006, the nurse at the free clinic noted that plaintiff had difficulty with word finding and slow speech. (Tr. 157). He reported problems with increased blood pressure, dizziness when turning his head, fuzzy headedness, and some stress. The nurse suspected a possible TIA and bilateral carpal tunnel syndrome. Therefore, she prescribed ASA and ordered

an MRI and carotid dopplers. In addition, the nurse referred him to an orthopaedist for evaluation. (Tr. 157).

On May 22, 2006, an MRI of the brain revealed nasoseptal deviation to the left with mild ethmoid sinusitis. (Tr. 151). This same date, a carotid doppler ultrasound revealed less than 50% stenosis in both internal carotid arteries. (Tr. 152).

On May 23, 2006, Dr. Peter E. Heinzelmann examined plaintiff due to numbness in both hands. (Tr. 145). Plaintiff also complained of dizziness and loss of balance. Dr. Heinzelmann noted that plaintiff had an unusual affect, somewhat disconnected from usual daily concerns. Plaintiff was also unsteady on his feet when getting up. However, plaintiff had a full range of motion in all joints. After reporting that plaintiff's grip strength was good, Dr. Heinzelmann diagnosed him with bilateral carpal tunnel syndrome, greater on the right side than the left, and indicated that plaintiff was probably a candidate for carpal tunnel release surgery. (Tr. 145, 146). At this time, plaintiff was noted to be taking Atenolol. (Tr. 145).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have

6

decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents his from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work

experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting her determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

The record does reflect that plaintiff was diagnosed with hypertension, early stage emphysema, restrictive airway disease, obesity, osteoarthritis, atypical chest pain, and carpal tunnel syndrome. However, a mere diagnosis is not sufficient to prove disability, absent some

evidence to establish a functional loss resulting from that diagnosis. *See Trenary v. Bowen*, 898F.2d 1361, 1364 (8th Cir. 1990). We note that plaintiff's hypertension and emphysema/reactive airway disease were treated via medication. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of disability). We also note plaintiff's testimony that both his hypertension and his shortness of breath improved after he lost 40 pounds.

While plaintiff contends that he was unable to use his hands for work-related activities, the record does not support his allegation. Plaintiff sought treatment for aching fingers on only one occasion prior to the administrative hearing. After the hearing, plaintiff was referred to an orthopaedist who diagnosed him with bilateral carpal tunnel syndrome and recommended that he undergo nerve conduction studies, which he failed to do. Although this doctor stated that plaintiff was a candidate for surgery, we note that plaintiff did not return for further treatment.

Similarly, the record contains no evidence, prior to the administrative hearing, to indicate that plaintiff was suffering from a mental impairment. While plaintiff did report suffering from stress on one or more occasions, there is no evidence that he was ever evaluated for or prescribed medication to treat a psychological problem. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments).

Although plaintiff contends that his financial situation should excuse his failure to seek additional treatment and continue his medication, we do not agree. It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem." *Shannon v. Chater,* 54 F.3d 484, 486 (8th Cir.1995). The record makes clear,

however, that plaintiff was receiving both medication and treatment through a free clinic. In spite of his alleged inability to afford treatment and medication, plaintiff also continued to smoke one to two packages of cigarettes per day. As such, his failure to seek mental health treatment, seek consistent treatment for his carpal tunnel syndrome, or continue taking his prescription medication is not excused. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan,* 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not *ipso facto* preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted).

As for plaintiff's dizziness and mental fogginess, an MRI of the brain revealed nasoseptal deviation to the left with mild ethmoid sinusitis. (Tr. 151). This same date, a carotid doppler ultrasound revealed less than 50% stenosis in both internal carotid arteries. (Tr. 152). We note that the symptoms of sinusitis include dizziness and difficulty concentrating. As such, it is clear that this condition was treatable via either medication or surgical intervention. *See* Wellington Tichenor, M. D., *Sinusitis for Physicians*, *at* www.sinuses.com/md.htm. Therefore, we not find these impairments to be disabling. *See Roth*, 45 F.3d at 282.

Additionally, plaintiff underwent only conservative treatment for his impairments, specifically, he took medication to control his blood pressure and his lung ailments and exercised to achieve weight loss, which also helped to reduce his blood pressure and his lung problems. *See Gowel v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding fact that physician prescribed conservative treatment weighed against plaintiff's subjective complaints). The records do not

10

show that plaintiff was ever prescribed any pain medication or any other medication to treat his osteoarthritis or carpal tunnel syndrome. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain). Further, plaintiff discontinued his blood pressure medication and his inhalers without his doctor's consent, continued to smoke against his doctor's advice,[1] and even left the hospital against medical advice on one occasion. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (holding that claimant's failure to follow prescribed course of treatment weighed against credibility when assessing subjective complaints of pain).

Perhaps the most damaging, however, is plaintiff's testimony that he had last worked three weeks prior to the administrative hearing. (Tr. 191). He explained that during the previous two years, he had worked approximately ten hours per week for his brother at construction sites, where his job duties included using an electric saw, bringing water to the other workers, handing boards to the workers, and helping "out as much as" he could. (Tr. 191-92). Therefore, while this work does not constitute substantial gainful activity, it does evidence plaintiff's ability to perform some work-related activities. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did. We will consider all of the medical and vocational evidence in your file to determine whether or not you have the ability to engage in substantial gainful activity.").

Plaintiff's own reports concerning his activities of daily living also contradict his claim of disability. On his disability function report, plaintiff indicated that he watches TV, uses the

---

[1] Plaintiff's doctor had warned him that his use of tobacco further increased his risk of developing atherosclerosis, cerebrovascular disease, and other related disorders. (Tr. 108-109).

11

computer, and takes a short walk, if his back is not too painful, on a daily basis. (Tr. 82). He also reported the ability to prepare sandwiches and TV dinners, help with the laundry, take out the trash, drive, sometimes shop in stores, pay bills, count change, handle a savings account, use a checkbook, watch TV, navigate the internet and play games, work on cars, and visit friends. (Tr. 84-86). At the administrative hearing, plaintiff testified that he was also familiar with basic computer operations and sometimes accessed the Internet from his stepfather's computer while visiting him. (Tr. 189- 90). When plaintiff lived with a roommate who owned a computer and a PlayStation, he played electronic video games. (Tr. 197). Plaintiff testified that his current activities included taking out the trash, doing laundry, and driving for thirty-five to forty minutes to visit his stepfather. (Tr. 193, 195). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, this level of activity is inconsistent with a finding of disability.

Therefore, although it is clear that plaintiff suffers from some degree of pain and discomfort, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213

(holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities supports plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Although plaintiff argues that the ALJ did not set forth reasons in the decision for discounting his credibility, the ALJ did acknowledge her duty to consider all alleged symptoms in accordance with the factors set forth in 20 C.F.R. § 404.1520 and SSR 96-8P. (Tr. 12). It is clear that the ALJ properly considered all of plaintiff's impairments, in combination, and determined that his subjective allegations were not totally credible when considered in light of the entire record. We find this to be a sufficient credibility finding. Contrary to plaintiff's contention, the ALJ is not required to explicitly discuss each *Polaski* factor. *See Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001) (holding that if the ALJ discredits plaintiff's credibility and gives a good reason for doing so, the court will defer to his judgement even if every factor is not discussed in depth).

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform a range of light work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the

13

plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, plaintiff's subjective complaints, and his medical records. On January 24, 2005, a non-examining, consultative physician completed an RFC assessment. (Tr. 136-137). After reviewing plaintiff's medical records, he concluded that plaintiff had a nonsevere impairment. (Tr. 136-137).

While we do note the results of Dr. Back's mental evaluation, we also note that the record contains no evidence that plaintiff sought treatment for his alleged mental impairments, prior to this evaluation. Likewise, there is no evidence to show that plaintiff was ever prescribed medication for anxiety, depression, or obsessive compulsive disorder. Dr. Back's report was completed after only one appointment, and opinions of doctor's who treat a plaintiff only once are generally not entitled to substantial weight. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (noting that if a doctor's opinion is "inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight"). Therefore, given the fact that plaintiff continued to work up until 3 weeks prior to the hearing and the fact that none of his treating

14

physicians limited his physical activities, we believe that the ALJ's RFC assessment should stand. The ALJ clearly took into account plaintiff's mental impairments, as well as the limitations imposed by his osteoarthritis and carpal tunnel syndrome when determining plaintiff's RFC.

We also find that substantial evidence supports the ALJ's finding that plaintiff can still perform work that exists in significant numbers in the national economy. When presented with a hypothetical by the ALJ involving a claimant of the same age, educational and vocational background as plaintiff, who could perform light work, limited by an inability to perform fine manipulation with his hands; inability to climb scaffolds, ladders, and ropes; need to avoid concentrated exposure to dust, fumes, smoke, chemicals, and noxious gases; and, ability to only perform work with simple non-complex instructions that requires little judgment, the vocational expert testified that the individual would still be able to perform work as a dishwasher, construction helper/signaler, and press machine operator. (Tr. 207-213). *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could still perform work that exists in significant numbers in the national economy.

**Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

AO72A
(Rev. 8/82)

DATED this 15th day of January 2008.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)